UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**FAULK COMPANY, INC.,**

   Plaintiff,

v.   No. 4:24-cv-00609-P

**XAVIER BECERRA, ET AL.,**

   Defendants.

## OPINION & ORDER

Before the Court are two cross-motions for summary judgment: one filed by Defendants United States of America, United States Department of Health and Human Services, Chiquita Brooks-LaSure, and Xavier Becerra ("the Government"); the other, by Plaintiff Faulk Company, Inc. ("Faulk"). ECF Nos. 15, 30. The Government's Motion, as originally filed, was a motion to dismiss. ECF No. 15. Upon proposal by the Court, the Parties agreed to convert the Government's Motion into a motion for summary judgment because the "disputes appear[ed] to be purely legal in nature." ECF No. 27. The Parties were also given the opportunity to provide additional briefing. *Id.* In response, Faulk filed its Motion. ECF No. 30. Having considered both Motions, other relevant docket filings, and the applicable law, the Court will **DENY** the Government's Motion for Summary Judgment and **GRANT** Faulk's Motion for Summary Judgment in part as to Counts I and III and **DENY** in part as to attorney's fees.

## BACKGROUND

This case arises out of the Internal Revenue Service's ("IRS") assessment of an excise tax on Faulk for tax year 2019. Faulk is a Texas corporation that provides janitorial services for Texas schools. Before 2019, Faulk offered minimum essential health insurance coverage to its employees as directed by the Affordable Care Act ("ACA"). In 2019, Faulk stopped providing this coverage to its employees.

On December 1, 2021, the IRS issued what it calls a Letter 226-J to Faulk proposing an excise tax known as the employer shared responsibility payment ("ESRP") for Faulk's failure to offer its full-time employees minimum health insurance coverage under the ACA. The Letter 226-J advised Faulk that the IRS's preliminary calculation of the ESRP was $205,621.71. The Letter 226-J purported to serve as a "certification" to Faulk prior to the assessment of the ESRP. Faulk responded on December 30, 2021, informing the IRS that it disagreed with the proposed assessment and that Faulk was paying the ESRP under protest. On January 28, 2022, Faulk filed a refund claim with the IRS for the 2019 ESRP but received no response.

Faulk then filed this case on June 28, 2024. The Complaint alleges that the United States Department of Health and Human Services ("HHS") and the IRS violated Faulk's statutory due process rights by improperly categorizing the Letter 226-J as a "certification" to Faulk prior to the assessment of an ESRP. Faulk argues that HHS, not the IRS, was required to provide the certification, and that the certification lacked proper notice of potential liability and notice of a right to appeal. On November 1, 2024, the Government moved to dismiss Faulk's Complaint under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure alleging that Faulk failed to state a claim for Counts I and II and that the Court lacks jurisdiction for Counts III and IV.

Once the Parties fully briefed the Government's Motion to Dismiss, the Court suggested that the Motion be converted to a motion for summary judgment because the Parties' disputes were "purely legal in nature." The Parties agreed. And with the Court's permission for additional briefing, Faulk filed a Cross-Motion for Summary Judgment. The Court now addresses both Motions.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it might affect the outcome of a case. *Id.* Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence available in the record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3). The Court need not sift through the record to find evidence in support of the nonmovant's opposition to summary judgment; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Before addressing both Motions for Summary Judgment, the Court will provide an overview of the statutory framework for 42 U.S.C. § 18081 ("ACA § 1411"), 26 U.S.C. § 4980H ("I.R.C. § 4980H"), and 45 C.F.R. § 155.310(i) ("HHS Certification Regulation"). The Court will then address Count I and determine whether Faulk is entitled to a refund for the ESRP assessed by the IRS for tax year 2019. Finding that the ESRP was improperly assessed based on the statutory language, the Court will then consider the enforceability of the HHS Certification Regulation in Count III. The Court will end by briefly addressing Counts II and IV and Faulk's request for attorney's fees.

### A. The Statutory/Regulatory Framework

This case demands familiarity with two statutory provisions of the ACA and one related regulation. The first statutory provision, ACA § 1411, is the employer mandate found in Title 42 of the United States Code. ACA § 1411 fashions minimum coverage requirements for employers and establishes HHS as the governing agency. Congress added the second provision, § 4980H, to the Internal Revenue Code ("I.R.C.") as an enforcement mechanism. I.R.C. § 4980H empowers the

3

IRS to penalize employers through the ESRP excise tax for failing to follow ACA § 1411's requirements. Three years after the ACA was enacted, the HHS Certification Regulation was issued in 45 C.F.R. § 155.310(a) by HHS's sub-agency, Centers for Medicare & Medicaid Services. The HHS Certification Regulation purports to clarify ACA § 1411 and I.R.C. § 4980H by establishing a process for penalizing an employer.

1. ACA § 1411

The ACA was passed in March 2010. Pub. L. No. 111–48, 124 Stat. 119 (2010). One of the ACA's many goals was "to increase the number of Americans covered by health insurance and decrease the cost of healthcare." *Optimal Wireless LLC v. Internal Revenue Serv.*, 77 F.4th 1069, 1071 (D.C. Cir. 2023) (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) (quotation omitted)).

To that end, the employer mandate in ACA § 1411 requires that businesses employing at least fifty full-time equivalent employees provide their employees minimum health insurance coverage. *See generally* 42 U.S.C. § 18081. Congress gave HHS the exclusive authority to effectuate its provisions. *See* 42 U.S.C. § 18081(a) ("The Secretary [of HHS] shall establish a program meeting the requirements of this section."). The ACA also directs each State to establish a health insurance exchange (generally, the "Exchange") to operate as a virtual marketplace for health insurance policies. *See* 42 U.S.C. § 18031(b).[1] With the help of the Exchange, HHS collects and verifies information from employers to facilitate enrollment and ensure compliance with ACA § 1411. *See* 42 U.S.C. § 18081(b)–(d).

In section (e), Congress guarantees due process rights to employers subjected to the mandate. An employer's failure to provide insurance to eligible employees could result in the employer being "liable for the payment assessed under [I.R.C. § 4980H]." *Id.* § 18081(e)(4)(B)(iii). This excise tax payment is referred to as the ESRP. If HHS determines that an employer did not meet the minimum coverage requirements, HHS

---

[1] If a State did not establish an exchange, HHS was to operate an exchange in that State. *Id.* § 18041(c).

4

must notify the Exchange. *Id.* Thereafter, the Exchange must give two notices to an employer: *First*, notice "that the employer may be liable" for an ESRP, *id.*; and *second*, notice of the employer's right to appeal. *Id.* § 18101(e)(4)(C).

Where appropriate, Congress explicitly allows HHS to make certain delegations, for example, to the Exchange. *See id.* § 18081(d) ("[T]he Secretary shall verify the accuracy of such information in such manner as the Secretary determines appropriate, including delegating responsibility for verification to the Exchange."). But there is no delegation to the IRS anywhere in ACA § 1411. The closest ACA § 1411 comes to permitting a delegation to the IRS is a provision that allows the Secretary of HHS "or one of such other Federal officers," including the IRS Secretary, to hear an appeal on an individual's eligibility for government-funded exchange subsidies. *Id.* § 18081(f)(1).

### 2. I.R.C. § 4980H

As referenced in ACA § 1411, an employer's compliance with providing coverage is driven through an excise tax, the ESRP. *Id.* § 18081(e)(4)(iii) ("may be liable for the payment assessed under section 4980H of Title 26"). I.R.C. § 4980H instructs the IRS on when an ESRP may be assessed against an employer. An ESRP may be assessed by the IRS if: (1) an employer "fails to offer its full-time employees . . . the opportunity to enroll in minimum essential coverage . . . for any month" as ACA § 1411 dictates; and (2) if "at least one full-time employee of the applicable large employer has been *certified* to the employer under [ACA § 1411] as having enrolled for such month in a qualified health plan . . . ." 26 U.S.C. § 4980H(a)(1)–(2) (emphasis added). Thus, an employer must fail to offer the coverage *and* receive certification under ACA § 1411 of such failure before an ESRP may be assessed by the IRS.

5

### 3. HHS Certification Regulation

Based on ACA § 1411 and I.R.C. § 4980H, HHS issued the HHS Certification Regulation in 2013. 45 C.F.R. § 155.310(i). The HHS Certification Regulation provides:

> As part of its determination of whether an employer has a liability under section 4980H of the Code, the Internal Revenue Service will adopt methods to certify to an employer that one or more employees has enrolled for one or more months during a year in a QHP for which a premium tax credit or cost-sharing reduction is allowed or paid.

*Id.* As stated in the HHS Certification Regulation, HHS delegated authority to the IRS to complete the "certification" required to properly assess an ESRP in I.R.C. § 4980H. The IRS carries out the HHS Certification Regulation through the Letter 226-J.

### B. Count I

Faulk argues in Count I that the ESRP assessed by the IRS failed to satisfy the certification requirement in I.R.C. § 4980H. The Court agrees. The required certification must come from HHS as directed by the statutory language.

"An administrative agency is itself a creature of statute" and therefore derives its power from statutory text. *Guardians Ass'n v. Civil Serv. Comm'n of N.Y.C.*, 463 U.S. 582, 614 (1983) (O'Connor, J., concurring). The Court therefore begins where it always does: with the text of the statutes. *See, e.g., Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023). The Court gives words their contextual meanings using normal rules of interpretation. *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). In interpreting ACA § 1411 and I.R.C. § 4980H, the Court endeavors to read the whole statutes contextually, giving effect to every word, clause, and sentence. *Fischer v. United States*, 603 U.S. 480, 486 (2024).

The Court cannot ignore the plain meaning of the text found in I.R.C. § 4980H.[2] Courts must "presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). As discussed in the previous section, two conditions must be met for the IRS to assess an ESRP on an employer. *First*, the employer "fails to offer its full-time employees . . . the opportunity to enroll in minimum essential coverage . . . for any month"; and *second*, "at least one full-time employee of the applicable large employer has been certified to the employer under [ACA § 1411] as having enrolled for such month in a qualified health plan . . . ." 26 U.S.C. § 4980H(a)(1)–(2). I.R.C. § 4980H is silent as to which agency must provide certification. It does not explicitly state that HHS *or* the IRS is responsible for such certification. The only indication it provides is that an employer must be "certified . . . *under* [ACA §] 1411." *Id.* § 4980H(a)(2) (emphasis added).

The Supreme Court has stated that the word "'under' is a 'chameleon' that 'must draw its meaning from its context.'" *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 124 (2018) (quoting *Kucana v. Holder*, 558 U.S. 233, 245 (2010)). In *National Ass'n of Manufacturers*, the Supreme Court found that "under section 1311 . . . is most naturally read to mean . . . pursuant to or by reason of the authority of." *Id.* (cleaned up). The statutory language at issue in *National Ass'n of Manufacturers* is similar to I.R.C. § 4980H in this case, which states that an employer must be "certified . . . under [ACA §] 1411." I.R.C. § 4980H(a)(2). Following the reasoning in *National Ass'n of Manufacturers*, the Court finds that "certification" to an employer is carried out "by reason of the authority" of ACA § 1411—authority that is exclusively given to HHS,

---

[2] *See Ogden v. Saunders*, 25 U.S. 213, 332 (1827) (Marshall, C.J. dissenting) (stating "that the intention of the [statute] must prevail; that this intention must be collected from its words; that its words are to be understood in that sense in which they are generally used by those for whom the [statute] was intended; [and] that its provisions are neither to be restricted into insignificance, nor extended to objects not comprehended in them, nor contemplated by its framers").

7

not the IRS. Based on this reading, I.R.C. § 4980H demands certification to an employer be carried out by HHS.

This is not to say that the Court's reading is without its challenges. I.R.C. § 4980H guarantees an employer "certification" under ACA § 1411, but the word "certification" does not explicitly appear anywhere in ACA § 1411 with respect to the employer mandate; forms of the word "certify" are only used with respect to the determination that an individual is exempt from the individual mandate.[3] *See* 42 U.S.C. §§ 18081(a)(4), 18081(b)(5), 18081(e)(2)(B), 18081(e)(4)(B)(iv).

Nonetheless, the Court can draw upon the context of both statutes to determine the meaning of "certified to the employer under section 1411." Congress likely used "certified" to refer broadly to the two notices guaranteed to employers prior to assessment of an ESRP: *First*, in (e)(4)(B)(iii), notice to the employer of its liability under I.R.C. § 4980H; and *second*, in (e)(4)(C), notice of an employer's appellate rights. This interpretation is based on the actual relationship between the two statutes and explains why Congress would use the term "certified" rather than "notice."

If, on the other hand, Congress had merely intended for the IRS to certify an employer, as a process entirely detached from the notices required in ACA § 1411, there would be no need to refer back to ACA § 1411. Instead, I.R.C. § 4980H would simply command the IRS to provide its own certification. Concluding otherwise would render I.R.C. § 4980H's reference to ACA § 1411 meaningless, and the Court must "give effect, if possible, to every word of the statute." *Fischer*, 603 U.S. at 486 (2024). Furthermore, the statute uses the past tense—"*has been*

---

[3]While the individual mandate is distinct from the ESRP, the Court notes that HHS is also responsible for the individual mandate "certification," just as the Court concludes for the employer mandate certification. *See* 42 U.S.C. § 18081(a)(4) ("The Secretary shall establish a program . . . for determining . . . whether to grant a certification."). It is also worth noting that the purpose of the individual mandate certification is to "attest[] that . . . an individual is entitled to an exemption" or liable for "the penalty . . . ." *See id*. This mirrors the Court's understanding of certification with respect to the employer mandate, which attests that an employer may be subject to a penalty (the ESRP).

8

certified"—to suggest that a prior certification, or the notices completed by HHS through the Exchange under ACA § 1411, must take place before the IRS enters the picture. Thus, once HHS provides certification to an employer, consisting of the notice of potential liability and notice of the right to appeal, only then may the IRS assess an ESRP.

The Government's alternative interpretation of I.R.C. § 4980H is untenable. The Government posits that by certification "under" ACA § 1411, "Congress likely meant only that the certification be consistent with [ACA] § 1411." ECF No. 26 at 4. In support, the Government highlights that the notices in ACA § 1411 do not require HHS or the Exchange to "certify" anything to an employer. *Id.* As addressed above, the Court acknowledges that ACA § 1411 does not use the word "certify" with respect to the employer mandate. The Court also agrees that "notice" and "certification" may not be the same. The Court further recognizes that the statutes in question are far from perfectly drafted. Still, it is clear that the two notices in ACA § 1411—notice of potential liability and notice of appellate rights—were important to Congress. In fact, within ACA § 1411, Congress ordered HHS to conduct a study "to ensure . . . [t]he rights of employers to adequate due process" were sufficiently protected. 42 U.S.C. § 18081(i)(1)(B). Moreover, the command to provide those notices was strictly given to HHS and the Exchange in ACA § 1411. The Court therefore finds it more likely that by explicitly referring to ACA § 1411, I.R.C. § 4980H demands the two ACA § 1411 notices before an ESRP is assessed—rather than just requiring the IRS's certification to be *consistent* with ACA § 1411, as the Government suggests.

In addition to its alternative interpretation of I.R.C. § 4980H, the Government also contends that the IRS is in the "best position" to certify an employer before assessing an ESRP. ECF No. 15 at 15; ECF No. 34 at 7. In support, the Government highlights that certain information—such as whether employers offer health care coverage to full-time employees—is reported to the IRS, not HHS, and this information is needed for certification. *See* ECF No. 34 at 7. The IRS then provides the Letter 226-J to employers based on the forms completed by employers. *Id.*

The Court finds this point inconclusive because other parts of the statute suggest that HHS is better situated. For example, in 42 U.S.C. § 18082(a)(1)–(3), HHS makes "advance determinations" of subsidies and then directs the IRS to pay such subsidies to health insurers each month. HHS is required to inform the Exchange and the IRS of the "advance determinations." *Id.* § 18082(a)(2)(A). HHS also provides the individual enrollee's employer information. *Id.* § 18082(a)(2)(B). Thus, like the Court's interpretation of the certification and ESRP process, the IRS only becomes involved with advance determinations after an individual files a tax return and the advance determination process has been made by HHS. The Government's argument concerning the agencies' statutory positioning is also weak because it ignores the numerous inter-agency communications contemplated by subsections (c) and (d) of ACA § 1411. The fact that certification would require communication of some information between the IRS and HHS is therefore unpersuasive.

Another argument made by the Government is that I.R.C. § 4980H requires certification for "each month" that an employer may be liable, but ACA § 1411 is silent on the frequency that HHS must provide notice of potential liability or appellate rights through the Exchange. The Government contends this is "fatal" to Faulk's interpretation of I.R.C. § 4980H. ECF No. 34 at 5. The Court fails to see, however, why HHS and the Exchange could not facilitate monthly certification to comply with both statutes. Just because ACA § 1411 does not explicitly require the same frequency as I.R.C. § 4980H does not mean compliance with both is impossible.

Again, there are interpretative challenges for both Faulk's position and the Government's position. For Faulk, "certify" and "notice" are different words, and ACA § 1411 does not use any version of the word "certify" in § 18081(e)(4)(B)(iii) or § 18081(e)(4)(C) requiring notices from HHS through the Exchange. For the Government, I.R.C. § 4980H explicitly refers back to ACA § 1411 for "certification" before the IRS may assess an ESRP. But nowhere in ACA § 1411 does Congress grant HHS the ability to delegate notice *or* certification to the IRS—much less grant that authority to the IRS itself. Rather, Congress made clear that

10

HHS and the Exchange must administer the due process, including notice of liability and notice of appellate rights. *See* 42 U.S.C. § 18081(e)(4)(B)(iii) (stating that "the Exchange shall notify the employer" of potential liability); *id.* § 18081(e)(4)(C) (stating that "[t]he Exchange shall also notify each person" of the appeals process).

There are good reasons for Congress to keep the administration of due process in ACA § 1411 close to HHS rather than permit delegation. The ESRP excise tax can have major consequences for an employer. In 2024, if an employer meeting the minimum threshold of 50 full-time employees failed to provide adequate health insurance, the employer could be assessed $12,375 per month, or $148,599 for the year. An employer with 500 employees would owe just under $1.5 million. For a large corporation, this penalty may seem insignificant. But for a low-margin industry employer—for example, a janitorial services company like Faulk—such an assessment may be devastating. It may therefore be important to Congress that the primary agency responsible for overseeing employer compliance, HHS, also be the agency ensuring due process is met.

Although the Court acknowledges that its ruling is not the only possible interpretation of the statutes in question, it is the best interpretation. The Court could adopt the Government's "more flexible . . . interpretation," which would certainly be easier given the established practice by the IRS to issue certifications, but "it is not the judiciary's prerogative to change the plain meaning and language of the statute." *United States v. Stewart*, 7 F.3d 1350, 1354 (8th Cir. 1993) (Lay, J., concurring in part).[4] Accordingly, because the Court finds that the IRS cannot issue an ACA § 1411 certification, Faulk is entitled to a refund of $205,621.71 for the ESRP assessed by the IRS for tax year 2019.

---

[4] *See Evans v. Jordan*, 8 F. Cas. 872, 873 (C.C.D. Va. 1813), aff'd, 13 U.S. 199, 3 L. Ed. 704 (1815) ("[In the legislative branch] is confided, without revision, the power of deciding on the justice as well as wisdom of measures relative to subjects on which they have the constitutional power to act. Wherever, then, their language admits of no doubt, their plain and obvious intent must prevail.").

## C. Count III

In Count III, Faulk asks the Court to declare 45 C.F.R. § 155.310(i) void and unenforceable. The Government makes two preliminary challenges to Count III. *First*, the Government contends that Faulk lacks Article III standing to challenge the regulation. And *second*, even if Faulk has standing, that the Declaratory Judgment Act bars the requested relief. After rejecting both preliminary challenges, the Court will then address both Parties' arguments for summary judgment on Count III.

### 1. Standing

Faulk does not lack standing to challenge the HHS Certification Regulation. Standing under Article III requires "injury in fact, causation, and redressability." *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (citing *Steel Co. v. Citizens For a Better Env't*, 523 U.S. 83, 103–04 (1998)). The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *See id.* "When seeking review of agency action under the APA's procedural provisions, Plaintiffs are also operating under a favorable presumption. They are presumed to satisfy the necessary requirements for standing." *Texas v. United States*, 86 F. Supp. 3d 591, 615 (S.D. Tex. 2015) (*citing Mendoza v. Perez*, 754 F.3d 1002, 1012 (D.C. Cir. 2014)).

The Court has already concluded that the "certification" referenced in I.R.C. § 4980H is the same as the "notices" required by ACA § 1411. As a consequence, Faulk was injured when HHS neglected to provide notice of liability and notice of appellate rights before the IRS assessed an ESRP, as the certification in I.R.C. § 4980H demands. The HHS Certification Regulation—which takes the opposite stance of the Court's interpretation—is therefore the primary, if not sole, cause of Faulk's harm. If the Court were to invalidate the HHS Certification Regulation, HHS would presumably retake control of certification rather than impermissibly delegating such responsibilities to the IRS. And if Faulk's requested relief is granted in Count III, Faulk's and other employers' future due process rights will be protected. The Court therefore finds

that Faulk has Article III standing to challenge the HHS Certification Regulation.[5]

### 2. Declaratory Judgment Act

The Declaratory Judgment Act also does not impede Faulk's requested relief in Count III. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes . . . any court . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). The Supreme Court has said that the federal tax exemption to the Declaratory Judgment Act is "at least as broad as the Anti-Injunction Act." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974). Both the Declaratory Judgment Act and Anti-Injunction Act apply "when the *target* of a requested injunction is a tax obligation." *CIC*

---

[5]The Court strains its memory to recall a lawsuit in which the Government has not sought dismissal under the standing doctrine. Perhaps this is due to the seemingly treacherous task of interpreting and applying recent Supreme Court precedents related to standing, which this Court recently compared to "exploring uncharted territory with no compass." *See Chamber of Com. of the United States of Am. v. Consumer Fin. Prot. Bureau*, No. 4:24-CV-00213-P, 2024 WL 5012061, at *2 n.2 (N.D. Tex. Dec. 6, 2024) (Pittman, J.) (citing *Haaland v. Brackeen*, 599 U.S. 255 (2023) (holding that a state lacks standing to challenge federal law preempting state laws on foster child placement, even though "Congress's Article I powers rarely touch state family law")); *contra Massachusetts v. EPA*, 549 U.S. 497 (2007) (holding that a state had standing to challenge the EPA's decision not to regulate emissions of greenhouse gases because that power was preempted and greenhouse gases affected "the earth and air within [their] domain"); *contra United States v. Texas*, 599 U.S. 670 624 (2023) (holding that states near an international border lacked standing to challenge the federal government's immigration enforcement policies because the state's financial injury was not "legally cognizable"); *but see Biden v. Nebraska*, 600 U.S. 477 (2023) (holding that Missouri established standing by showing that it "suffered . . . a concrete injury to a legally protected interest, like property or money"); *contra Dept. of Ed. v. Brown*, 600 U.S. 551 (2023) (holding that individual loan borrowers lacked standing to allege the federal government unlawfully excluded them from a one-time direct benefit program purportedly designed to address harm caused by an indiscriminate global pandemic). However, the standing analysis in this case is simple and no serious, non-meritless argument can be posited that Faulk does not have standing to bring its present challenge.

*Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209, 218 (2021) (emphasis added).

In determining the target of a requested injunction, courts look at "the relief requested" or "the thing sought to be enjoined" in the complaint. *Id.* The "taxpayer's subjective motive" is irrelevant. *Id.* at 217. Rather, the "objective aim" is the key. *Id.* When, as was the case in *CIC Services*, a party claims that the enforcement of a tax is *procedurally* flawed, the target is not the tax penalty itself. *See id.* at 218.

The target of Count III is not against ESRP excise tax itself—it is against the improper certification process that stands as a procedural prerequisite to the tax. Nowhere in Count III does Faulk assert that the ESRP is unlawful. Rather, it alleges that the HHS Certification Regulation "purports to sever certification from [ACA §] 1411," and is "therefore . . . not in accordance with the law." ECF No. 1 at 13. Faulk's target is the process by which the ESRP is assessed.

This is confirmed by the fact that the certification process, as the Court has interpreted, is administered by HHS, not the IRS. The downstream effect of ruling that the HHS Certification Regulation is void and unenforceable may inhibit the IRS's ability to assess the ESRP excise tax until HHS determines the proper way to issue such certification through the Exchange as ACA § 1411 requires. Still, the Court "rejects the Government's argument that an injunction against [the certification delegation] is the same as one against the tax penalty." *See CIC Servs., LLC*, 593 U.S. at 219.

Faulk's requested relief in Count III targets the proper statutory interpretation of the process required in I.R.C. § 4980H and ACA § 1411, not the tax itself. Therefore, the Declaratory Judgment Act does not bar the requested relief.

### 3. HHS Certification Regulation

Having found that Faulk has standing, that the Declaratory Judgment Act does not bar Count III, and that I.R.C. § 4980H and ACA § 1411 do not confer any power to the IRS to "certify" an employer for an ESRP, the Court now concludes that 45 C.F.R. § 155.310(i) should be set

aside as void and unenforceable. The Administrative Procedure Act ("APA") empowers courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

As discussed above, the HHS Certification Regulation delegates power to the IRS to certify an employer before assessing an ESRP. 45 C.F.R. § 155.310(i). ("As part of its determination of whether an employer has a liability under section 4980H of the Code, the Internal Revenue Service will adopt methods to certify to an employer that one or more employees has enrolled . . . ."). In explaining the subsection, HHS stated that the "certification program" in the HHS Certification Regulation "is distinct from the notification specified in [ACA § 1411]." 78 Fed. Reg. 4593, 4636 (Jan. 22, 2013).

The Court disagrees. HHS did not have authority to add any certification program to be administered by the IRS because ACA § 1411 does not allow HHS to delegate to the IRS. As discussed in Section B, the closest thing to permissible delegation in ACA § 1411 allows the IRS to be one of many federal officers that may hear an appeal of an individual's eligibility for subsidies. *See* 42 U.S.C. § 18081(f)(1). Likewise, nothing in I.R.C. § 4980H authorizes the IRS to issue the certification. As the Court found, "certifi[cation] . . . under [ACA §] 1411" is a reference to HHS's duty to provide notices to employers in ACA § 1411 through the Exchange. 26 U.S.C. § 4980H(a)(2). Consequently, no independent power is granted to the IRS in I.R.C. § 4980H, and the Court finds that 45 C.F.R. § 155.310(i) should be set aside as void and unenforceable.[6]

---

[6]Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 951 (2018) ("Section 706 of the APA authorizes and requires a court to 'set aside' agency rules and orders that it deems unlawful or unconstitutional. This extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation, as it empowers courts to 'set aside'— i.e., formally nullify and revoke—an unlawful agency action."); Mila Sohoni, *The Power to Vacate a Rule*, 88 GEO. WASH. L. REV. 1121, 1173 (2020) ("The term 'set aside' means invalidation—and an invalid rule may not be applied to anyone.").

### D. Counts II and IV

Faulk's Complaint contains four total causes of action. This opinion does not resolve Count II or Count IV. In Faulk's response to the Government's Motion, Faulk withdrew Count II. ECF No. 24 at 1. Therefore, Count II is no longer before the Court. As for Count IV, Faulk did not move for summary judgment because it is an APA challenge under 5 U.S.C. § 706(2)(A) alleging arbitrary and capricious decision making. *See* ECF No. 1 at 14. Such challenges are based on the administrative record, which HHS has yet to file for 45 C.F.R. § 155.310(i). Notwithstanding, 45 C.F.R. § 155.310(i) is void and unenforceable for exceeding statutory authority, as the Court found in Count III. Count IV is therefore unnecessary for this Court's ruling on the enforceability of the HHS Certification Regulation.

### E. Attorney's Fees

Lastly, the Court finds Faulk's request for attorney's fees premature. Faulk's Motion was precipitated by an order from this Court transitioning from motion to dismiss to motion for summary judgment. ECF No. 29. In the Court's Order, the issues to be addressed were enumerated, and attorney's fees was not listed. *See id.* Therefore, to adequately address whether (1) Faulk is the substantially prevailing party and (2) the Government was not substantially justified in its position, Faulk must submit a separate motion for attorney's fees.

### CONCLUSION

Based on the reasons above, the Court **DENIES** the Government's Motion. ECF No. 15. The Court **GRANTS** Faulk's Motion in part and **ENTERS** summary judgment in Faulk's favor on Counts I and III. ECF No. 30. Finally, the Court **DENIES** Faulk's Motion in part as to attorney's fees. *Id.*

Accordingly, the Court **ORDERS** the IRS to refund Faulk **$205,621.71** for the ESRP assessed for tax year 2019. The Court further **ORDERS** that 45 C.F.R. § 155.310(i) be **SET ASIDE** as void and unenforceable.

Given the Court's ruling on Count III, the Court finds that there are no outstanding issues left in this case other than the Plaintiff's request for attorney's fees. If either Party objects to this Court entering final judgment following the resolution of attorney's fees, the Court **ORDERS** such objection be filed **on or before April 17, 2024**.

**SO ORDERED** on this **10th day of April 2025.**

_____
**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE

17